NOT DESIGNATED FOR PUBLICATION

No. 113,971

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRILL L. ANDREWS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFERY E. GOERING and JOHN J. KISNER JR., judges. Opinion filed March 6, 2020. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

BUSER, J.:  This is Terrill L. Andrews' direct appeal of his multiple convictions for sex crimes against three young girls. Andrews presents five issues for our consideration. We have reordered them for ease of analysis. First, Andrews contends that his statutory and constitutional speedy trial rights were violated when his defense counsel obtained unauthorized trial continuances. Second, Andrews asserts his statutory and constitutional rights were violated when he did not appear in court to object to defense counsel's unauthorized trial continuances. Third, he claims he was deprived of conflict-free defense counsel during the litigation. Fourth, Andrews states the district court erred when it found

1

a complaining witness, T.H., was unavailable to testify at the bench trial and, as a result, admitted her preliminary hearing testimony in evidence at the trial. Fifth, Andrews argues that the district court erroneously denied his motion for a psychological evaluation of the complaining witness, A.C., who testified at the bench trial.

Upon our review of the parties' briefs, the extensive record on appeal, and considering the oral arguments, we do not find any reversible error regarding the issues presented and, therefore, we affirm the convictions.

FACTUAL BACKGROUND

In early October 2013, A.C., a 13-year old girl, and T.H., a 16-year old girl, ran away together from a group home in Wichita. T.H. had previously met Andrews, who was 40 years old, and from October 10, 2013, until October 12, 2013, the two girls stayed at his residence. About October 12, 2013, A.C. left Andrews' residence and reported that Andrews had engaged in sexual intercourse with her on three occasions while at the residence.

A.C. made this report to Tiffany Smith, a coordinator at the Open Arms Child Development Center in Wichita. Smith immediately contacted the Wichita Police Department and a criminal investigation was commenced. Officer Shawn Isham interviewed A.C. at her foster home. A.C. told Officer Isham that Andrews had raped her "multiple times," and described the location of his residence. At trial, A.C. testified to three separate occasions that Andrews raped her and touched her breasts.

Nurse Ruthann Farley testified at trial. Farley conducted a sexual assault medical examination on A.C. at a local hospital, corroborated the girl's testimony, and stated that A.C. had abrasions and lacerations indicative of blunt force trauma. Farley opined that

2

these injuries appeared recent and were consistent with A.C.'s account that she had been raped.

Upon learning of A.C.'s report, police officers visited Andrews at his residence to determine if other runaways were at the home. Andrews informed the officers he was the only person inside the house but he consented to a search of his residence. During the search, officers discovered T.H. hiding in a bedroom closet. Andrews was arrested.

The State obtained a search warrant to view the contents of Andrews' cellphone. At trial, Detective David Wertz testified that Andrews' cellphone contained a video of both A.C. and T.H. naked in the shower. The video included a view of Andrews reflected in the mirror and recorded his voice as he spoke to both girls. Andrews' cellphone also contained a video of him engaging in oral sexual relations with T.H.

At the preliminary hearing, T.H. testified that she had sexual intercourse and oral sexual relations with Andrews. She indicated that Andrews took some videos during the oral sexual relations. During trial, the district court found T.H. unavailable as a witness and, as a result, a transcript of her preliminary hearing testimony was read by the trial court.

A third victim, R.M., a 14-year-old girl, was identified during the search of Andrews' cellphone. The search revealed numerous lewd pictures of R.M. and sexually explicit text messages between Andrews' and R.M.'s cellphone numbers. At trial, R.M. testified that she had texted with Andrews for a few months before the sexual incidents occurred. In their text conversations, Andrews had claimed to be a teenager. R.M. testified that she had sexual intercourse with Andrews on three separate occasions.

Andrews was initially charged on October 16, 2013. An amended information was later filed which charged him with three counts of rape (A.C.); three counts of aggravated

3

indecent liberties with a child (A.C.); three counts of aggravated indecent liberties with a child (R.M.); and two counts of sexual exploitation of a child (T.H.).

Following a bench trial held on February 10, 2015, Andrews was found guilty of three counts of rape (A.C.); three counts of aggravated indecent liberties with a child (R.M.); and two counts of sexual exploitation of a child (T.H.). The trial court acquitted Andrews of three counts of aggravated indecent liberties with a child (A.C.). The trial court made extensive and detailed findings of fact in support of its verdicts at the conclusion of the bench trial.

With regards to the three counts of rape involving A.C., the trial court found it was undisputed that A.C. was only 13 years of age at the time of the occurrences. The trial court noted that at trial, A.C. denied that she consented to sexual intercourse and this testimony was corroborated based on the report she made to the police. Still, the district court observed that given her age, "it doesn't really make any difference whether she consented to this or not." Additionally, the trial court commented that the forensic medical exam "found injuries consistent with intercourse." In summary, the trial court characterized the evidence of guilt as "strong."

As to the two counts of sexual exploitation of T.H., the trial court found that T.H. was 16 years old during the relevant time periods. Two videos discovered on Andrews' cellphone that were admitted in evidence "clearly indicate or show or depict [T.H.] engaging in sexually explicit conduct and it is done with the intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the defendant or any other person." Additionally, the trial court found that Andrews promoted the performance of the sex act by videotaping it. As to both counts, the trial court found the evidence of guilt was "overwhelming."

4

With regards to the three counts of aggravated indecent liberties with R.M., the trial court found that she was 14 years of age during the relevant time periods. The trial court concluded that on September 25, 2013, Andrews checked R.M. out of school and "she ended up at his house and they had sex three different times." While the trial court noted that there was some question regarding whether the sexual encounters were consensual or not consensual, it stated "it doesn't really matter whether the intercourse was consensual or not. The question is did it happen. And if it happened then, because of the age of [R.M.], it really doesn't make any difference whether it was consensual or not."

The trial judge noted that R.M. was a reluctant witness and, as a result, commented, "I'm not totally certain why [R.M.] would be motivated to lie about any of this stuff. And certainly the photographs on the defendant's phone, which again are explicit photographs, corroborate [R.M.'s] testimony." Because the evidence proving three counts of aggravated indecent liberties with R.M. was "more than sufficient," the trial court found Andrews guilty of those three counts.

After the trial, on June 2, 2015, Andrews was sentenced under the aggravated habitual offender statute, K.S.A. 2013 Supp. 21-6626, to a controlling term of life in prison without parole.

PROCEDURAL BACKGROUND

Given the speedy trial right to personally appear in court, and attorney conflict issues raised by Andrews on appeal, it is necessary to detail the procedural background of this criminal litigation.

At all times following his arrest Andrews was in custody and awaiting trial. At the inception of the prosecution, the district court appointed Sharon Barnett to represent Andrews. Barnett represented Andrews at the evidentiary preliminary hearing held on

January 9, 2014, and the arraignment the following day. Shortly thereafter, in a letter to Barnett filed with the district court on January 27, 2014, Andrews handwrote: "Respectfully request no further continuances be made on my [behalf] without my verbal consent in open court." In a second letter to Barnett filed on February 3, 2014, Andrews handwrote: "[N]o continuances or motions are to be made or filed on my behalf without my prior verbal approval in open court."

About six months later, Andrews filed a pro se motion to dismiss Barnett as his attorney claiming ineffective assistance of counsel, objecting to the continuation of trial without his consent, and violation of his right to a speedy trial. A hearing on the motion was held on July 25, 2014. At the hearing, Barnett responded:

> "This case has been continued a numerous amount of times, however, I have consulted with [Andrews] every single time. We both agreed it was my understanding it was in his best interest to continue the case because he asked me to work on plea negotiations which I have done with [the prosecutor.]"

The district court concluded there was no basis to appoint new counsel because, although Andrews had no right to appear in court on continuance motions, he did have a right for Barnett to consult with him about continuances which she had done.

Andrews promptly filed a motion to reconsider, wherein he advised he had "filed an official complaint" against Barnett with the Office of the Disciplinary Administrator. At a hearing on August 1, 2014, Andrews reprised his prior complaints. In response, Barnett informed the district court, "I would disagree with most of what Mr. Andrews says. I have visited with him a minimum of 14 times to discuss this case and how he wanted to proceed. At no time did he ever tell me he wanted to proceed to trial. Ever." Andrews interjected, "That's a lie."

6

The district court denied the motion to reconsider, acknowledging that "it sounds like that he's very upset and unhappy with a number of things," but not finding "justifiable dissatisfaction" because any breakdown in communication was attributable to Andrews.

Shortly thereafter, Andrews filed another pro se motion to dismiss Barnett which was heard by a different judge. On this occasion, the district judge granted Andrews' request to dismiss Barnett, but admonished him that the trial would be continued past the September 8 trial setting to allow the substitute attorney to become familiar with the case. Andrews responded that he understood the delay. In summary, the record indicates that Barnett obtained trial continuances on six occasions between January 10, 2014, and August 4, 2014.

The district court substituted Bradley Sylvester as Andrews' appointed attorney. On October 9, 2014, Andrews handwrote a letter to Sylvester and filed a copy with the district court that complained about Barnett's failure to abide by his objections to continue the trial in violation of K.S.A. 2013 Supp. 22-3402(a).

On November 19, 2014, Andrews filed a pro se motion to dismiss the case due to violations of his statutory right to a speedy trial as set forth in K.S.A. 2013 Supp. 22-3402(a). In particular, Andrews complained that both Barnett and Sylvester had continued his case more than eight times without his consent, and that the statutory speedy trial time had expired. Of note, Andrews wrote that he was "relying explicately [*sic*] and solely on his statutory right to speedy trial set forth by K.S.A. 22-3402 rather than by the Sixth Amendment."

Several weeks later, Andrews filed a pro se "Motion For Immediate Removal of Ineffective Assistant Counsel." Andrews alleged Sylvester should be removed because he had continued the jury trial on several occasions without Andrews' presence in court and

despite his objections. Additionally, Andrews complained that it had been about four months since Sylvester had last met with him.

A hearing on the motion to remove Sylvester as counsel was held on January 16, 2015, before another district judge. Andrews informed the district court, "I don't think [Sylvester is] a bad attorney. What I've heard about Mr. Sylvester is he's a very good attorney. I just think he's very busy. I don't think he has the time to litigate my case, give it the attention it's due." In response, Sylvester acknowledged that his caseload prevented him from talking with Andrews, but he outlined the efforts he had made to review the case materials and transcripts and offered his opinion that he was "not sure if there [was] a conflict."

The district judge commented to Sylvester:

"And you can correct me if you believe this is wrong, Mr. Andrews.
"But it doesn't sound like Mr. Andrews has a—an objection to you continuing to be his lawyer as long as you can take the time to talk to him and prepare a defense.
"Am I correct?
"THE DEFENDANT: "Yes sir."

The district judge denied the motion because "I think you're happy with Mr. Sylvester, as long as he gives you the time needed to prepare." The district court confirmed the trial setting for January 26, 2015, although Andrews expressed concern that Sylvester would be able to litigate his numerous pro se motions and be prepared for trial.

On January 26, 2015, Sylvester filed, on Andrews' behalf, a motion to dismiss the criminal case due to speedy trial violations. The motion alleged that during the time of Barnett's representation she had obtained trial continuances without Andrews' consent.

The motion specifically noted that the statutory speedy trial time had run in the month prior to the dismissal of Barnett as Andrews' attorney.

The hearing on the motion to dismiss the criminal case occurred on February 6, 2015. At the beginning of the hearing, however, Sylvester announced that Andrews had just filed a pro se motion entitled: "Motion for Immediate Removal of Ineffective Assistant Counsel and Appoint Standby Counsel." In relevant part, the motion stated that Sylvester had filed a motion to dismiss the charges due to Barnett's alleged ineffectiveness, but now Andrews asserted that Sylvester also had violated his right to a speedy trial. The motion sought the dismissal of Sylvester as defense counsel, the right for Andrews to represent himself, and for appointment of standby counsel.

At the hearing, Andrews made several allegations, including that Sylvester had continued the trial on three occasions without Andrews' consent or presence in court, which he asserted were "in the statutory rights in Kansas." Andrews also advised the district court that he wanted a bench trial and he could litigate his own motions including the speedy trial motion.

The prosecutor responded, "the State has been ready to go to trial, Judge." Moreover, the prosecutor complained, "[t]his exact motion that Mr. Andrews has just articulated to the Court has already been ruled on." The prosecutor continued:

"Judge Bribiesca heard all of these arguments. He was able to ascertain from the defendant that he was perfectly satisfied with Mr. Sylvester as his counsel; he just wanted him to take this case to trial. So then we got the firm trial date and here we are.
"And we are here on the Friday before trial. . . . What this reeks of, Judge, is a delay tactic, quite frankly, because all of this has been heard before the Court. All of this has been ruled on."

In response to the district court's inquiry, Sylvester indicated that he visited with Andrews in August 2014 and advised him that due to a "glut of huge trials" his trial would be delayed. Sylvester said that he had provided Andrews with discovery materials, corresponded with him, and had informed Andrews he would only file pro se motions if they were legally appropriate.

Sylvester stated that when he prepared the motion for dismissal due to speedy trial violations by Barnett, he advised Andrews that the motion would not apply to Sylvester because he had advised Andrews at the outset of his representation of the need to continue the case. Sylvester acknowledged that Andrews was not present in court when he sought trial continuances. Lastly, Sylvester advised that following negotiations, the State had offered a plea bargain with an on-grid sentence of 20 years but Andrews rejected it.

The district judge summarized Andrews' requests: "[T]o represent yourself, to have me appoint somebody completely blind to the case to be shadow counsel, to waive jury trial and to proceed to bench trial on Monday." Andrews replied, "Yes. Yes, sir. That's correct."

The district court took a recess to allow Andrews to discuss these matters with Sylvester. At the conclusion of the recess, the district court embarked on an extensive and detailed colloquy with Andrews, in compliance with *State v. Lowe*, 18 Kan. App. 2d 72, 847 P.2d 1334 (1993), to insure that he was fully informed of his rights, responsibilities, and potential perils of self-representation.

At the conclusion of the colloquy, the district judge addressed Andrews: "Mr. Sylvester has indicated to me after visiting with you that you wish for me to appoint him as the shadow counsel to assist you in this matter; is that right?" Andrews replied, "Yes

10

sir." The district judge admonished Andrews that if, during the proceedings, he wanted new counsel:

> "We don't really have that circumstance because Mr. Sylvester is your shadow counsel and, you know, he'll assist you in these matters. But I do need to tell you that if at some point in time during the trial you want me to appoint new counsel and you don't want me to appoint Mr. Sylvester, you want me to appoint somebody else, that will not be a reason to continue the trial or to delay the trial."

Regarding pending motions, the district judge observed, "We've got several motions pending that Mr. Sylvester has filed on your behalf. I realize that there are motions pending that you want to argue, which is partly a reason that's driving this decision." The district court also cautioned Andrews that his ability to argue pretrial motions may be inferior to Sylvester's ability.

The district court also informed Andrews that if he was convicted as charged he would face a maximum of 11 consecutive life sentences without the possibility of parole. Andrews responded that he was willing to take the risk of representing himself under the circumstances. At the conclusion of the lengthy colloquy, the district court and Andrews had the following exchange:

> "THE COURT:  . . . . What is your desire with respect to your wish to represent yourself?
> "THE DEFENDANT:  I would like to represent myself and retain Mr. Sylvester as my—
> "THE COURT:  Standby counsel?
> "THE DEFENDANT:  Yes, sir.
> "THE COURT:  All right. Well, the Court will grant your motion then. You are now representing yourself. Mr. Sylvester will be here to assist you to the extent that you feel like you need assistance, but you're in charge of the case. Do you understand that?
> "THE DEFENDANT: Yes sir."

11

The district court then summarized the outstanding motions and stated that it would hear the testimony of any witnesses so they would not have to return to court on Monday. Andrews advised the district court, "As far as the speedy trial motion, sir, [Sylvester] put in a speedy trial motion. I would like my speedy trial motion." The district court agreed to the request.

As part of Andrews' motion to dismiss due to violation of his statutory speedy trial rights, the State called Barnett as a witness. Barnett testified that while she represented Andrews she visited him 15 times and the trial was continued on 5 occasions. When asked why the trial was continued on those occasions, Barnett explained:

> "[BARNETT:]  According to the notes in my file, Mr. Andrews wanted me to explore plea negotiations with the District Attorney, and at that time I was dealing with Justin Edwards. And I did begin plea negotiations on his behalf. According to my notes, it appears that we were kind of going back and forth on those plea negotiations. I kept Mr. Andrews aware of what the offers were and I just continued to work on plea negotiations.
>
> "[THE STATE:]  At that time did the defendant want to go to trial?
>
> "[BARNETT:]  Not at that time, no.
>
> "[THE STATE:]  And at that time was the defendant happy or unhappy about the continuances or something else?
>
> "[BARNETT:]  Kind of both. He didn't like the continuances and he made that clear to me. He didn't like the continuances. But he also knew I was trying to get a plea offer that he was happy with.
>
> "[THE STATE:]  And he understood that the reason for the continuances was so that you could continue to negotiate with Mr. Edwards?
>
> "[BARNETT:]  Yes."

Barnett acknowledged that while she consulted Andrews about the trial continuances, she did not obtain his permission to continue the trial or arrange for him to be present in court when she sought continuances.

12

The State then presented two law enforcement officers who testified that Andrews had consented to their search of his residence for possible runaways. At the end of the day, the hearing was adjourned until Monday to allow Andrews to review other motions and offer any witnesses.

On Monday, February 9, 2015, the district court resumed the pretrial hearing to permit Andrews to present evidence and argue his motions. Andrews called Sylvester as a witness in support of his motion regarding speedy trial violations. Andrews commented, "If there's an issue with him coming to the stand as standby counsel then I ask the Court to appoint a new attorney as standby counsel." The district court suggested that Sylvester make a proffer of his testimony which was agreeable to Andrews. As Sylvester gave a proffer, Andrews objected that Sylvester

> "did not tell me he was going to continuously continue my jury trial. . . . This is the reason I want to put him on the stand, so I can get it in the record and ask him very simple questions:  Did he continue the jury trial and the dates and was I made aware of it, did he come talk to me about it. It's very simple things."

The district court asked Sylvester to confine his proffer to the matters identified by Andrews—four dates where he sought trial continuances. Sylvester expressed his concern about testifying to conversations that were adverse to Andrews' motion to dismiss. Sylvester explained, "[W]e had discussed the speedy trial case. Now we are adverse. I didn't think there was any problem with continuing to represent him or doing this trial if we did it with Sharon Barnett, and that's what I explained to him." Andrews countered that all he was asking Sylvester about were the dates of the continuances which lead up to the running of the statutory speedy trial deadline. For her part, the prosecutor indicated she was uncomfortable with Sylvester as standby counsel if he provided testimony that was adverse to Andrews' motion.

The district judge summarized the argument:

> ". . . So what I hear . . . the two lawyers telling me is that if Mr. Sylvester testifies and the testimony that he is anticipated to give Mr. Andrews is not going to agree with then the better practice is that he would not be suitable to serve as Mr. Andrews' standby counsel."

The district court allowed Sylvester to testify under questioning by Andrews and indicated that "if it results in your disqualification as standby counsel, it results in your disqualification as standby counsel." In response, Andrews stated that

> "if there's a problem, your Honor, that [Sylvester] feels he is going to be in conflict then I have no problem with asking that he be removed and new standby counsel being appointed, but I don't think there's a problem. I think right now we're just having a miscommunication. I think he thinks that I'm saying something I'm not. I just want to make sure if there is a problem, before we go to the extent of saying let's remove him, that there is a problem."

The district court recessed to allow Andrews and Sylvester to confer, whereupon the district court was informed that Andrews desired testimony from Sylvester rather than a proffer. The district court permitted the procedure, indicating after that it would "see the extent to which [Sylvester] can still perform as your standby counsel at the trial."

On direct examination, Andrews established that Sylvester had sought three trial continuances but, other than his initial meeting when he explained to Andrews generally that the trial would need to be continued due to his schedule, he did not ask Andrews for his approval of a specific continuance, and Andrews was never present during any of the court hearings when the continuances were granted.

14

On cross-examination, Sylvester explained that at his first meeting with Andrews he "let him know that I was going to be on his case and it would not be going for a while. . . . I was very busy." Sylvester testified that he "didn't perceive that [Andrews] would object to any continuance." Sylvester testified that until the recent Friday hearing he understood that Andrews was not concerned about Sylvester's involvement in the speedy trial motion, and he believed that Andrews was agreeable to pursuing the speedy trial motion only as to Barnett's representation, not Sylvester's.

Upon the completion of evidence, Andrews asked for appointment of new standby counsel to argue his motion to dismiss the criminal case. The request was denied. Because the district court did not consider Sylvester as standby counsel for the motion, it permitted Andrews to argue his motion to dismiss due to a violation of his statutory right to speedy trial. Andrews' arguments mirrored his prior arguments. In response, the State contended that Andrews was not required to be present in court when the trial continuances were requested. Moreover, the State argued that K.S.A. 2013 Supp. 22-3402(g) provides that if the district court erred in attributing the trial continuances to the State, there still was no basis to dismiss the case.

The district judge denied Andrews' motion, reasoning:

"Based on the testimony of Sharon Barnett, there was consultation with the defendant prior to requesting these delays. [K.S.A. 2013 Supp. 22-3402(g)] doesn't say that the defendant must consent. What the statute says is the defendant's attorney, in consultation with the defendant. . . . [T]here was consultation . . . with Mr. Andrews prior to requesting the continuances.
    . . . .
". . . I'll concede the point to Mr. Andrews that [with Sylvester] perhaps the words continuance of the trial may not have been used in that consultation, but it was clear that Mr. Sylvester did have some conversation with Mr. Andrews about the severity of the case, the fact that it was a large case, the fact that you have to take some time to

15

> prepare these cases. And . . . that even though the words 'I'm going to continue this case' might not have been said, the whole purpose of Mr. Sylvester's visit was to convey the fact that this case was not going to go to trial in the immediate future."

The district court also found that, if Andrews was correct and the continuances were improperly attributed to the defense, K.S.A. 2013 Supp. 22-3402(g) did not provide a basis to dismiss the criminal charges.

Before proceeding to other motions, the district court asked Andrews if he felt there was a conflict which prevented Sylvester from representing him as standby counsel on the pretrial motions and trial. Andrews was ambivalent. The district court reminded Andrews that at the end of the Friday proceeding he had told the court that he agreed to have Sylvester as standby counsel. Andrews inquired about the possibility of appointing new standby counsel but the district court replied there was nothing to prohibit Sylvester from serving as standby counsel. The district court informed Andrews that he could proceed pro se with or without Sylvester as standby counsel. Andrews replied, "If you're not willing to give me a new standby counsel then I will keep Mr. Sylvester." Andrews then proceeded to argue his remaining pretrial motions.

On Tuesday, February 10, 2015, the case was scheduled for a bench trial. Andrews appeared pro se with Sylvester as standby counsel. Before presentation of evidence, the prosecutor advised the trial court that due to the unavailability of T.H., the State sought to admit her preliminary hearing testimony at trial. The district court's ultimate granting of the State's motion is discussed later.

The district court asked for Andrews' response to the motion. Andrews replied:

> "Your Honor, before we proceed any further, I would like to say that when I went pro se it was as I explained to you before. I was mostly going pro se . . . for a couple reasons. One, I had an issue as far as with my speedy trial motion that I was putting in. I

16

felt that my attorney was part of that. Also, he was not willing to do some motions that I wanted done. And, further, I felt that even though he had been my attorney of record, he hadn't had time to actually review my case. I didn't feel that he knew my case.

". . . I am not an attorney. I am not able to defend myself properly at this time, so I am requesting that Mr. Sylvester be reinstated as the lead on this case."

The district court asked Sylvester if he was "okay" trying the case. Sylvester was agreeable, and the district court determined that he had been "rehired" to handle the rest of the motions and represent Andrews at trial. Sylvester represented Andrews throughout the trial and sentencing. Andrews appealed.

After the parties filed their appellate briefs and this matter was pending before our court, the Kansas Supreme Court issued its opinion in *State v. Wright*, 305 Kan. 1176, 390 P.3d 899 (2017) (*Wright I*). In this opinion, our Supreme Court reaffirmed that under K.S.A. 22-3402, a continuance hearing is a critical stage at which a defendant is entitled to be present in the courtroom. 305 Kan. at 1178. However, because the Supreme Court determined the trial court had made insufficient factual findings regarding whether the lack of Wright's personal presence at continuance hearings resulted in reversible or harmless error, the appellate case was remanded to the district court for additional factual findings. 305 Kan. at 1180-81.

Upon our review, like *Wright I*, we concluded that the record on appeal contained insufficient factual findings and conclusions of law by the district court regarding whether the absence of Andrews in the courtroom during any trial continuance hearings resulted in reversible or harmless error. As a result, we were unable to properly consider this issue on appeal.

On January 2, 2018, while retaining appellate jurisdiction, we remanded this case to the district court with directions to conduct an evidentiary hearing in order to provide the parties with an opportunity to offer evidence regarding whether Andrews' failure to be

17

personally present at continuance hearings resulted in reversible or harmless error. The hearing was conducted on December 17, 2018. On May 17, 2019, the district court filed an order memorializing its findings.

The district court concluded that Andrews was not present in the courtroom at any of the 10 hearings when defense counsel requested continuances despite Andrews' request to be present at the hearings. As a result, the district court found that "'in all ten of those situations the defendant's right to be present was violated.'" The district court concluded:

> "However, the Court found these violations of Mr. Andrews' constitutional rights to be harmless error. The court believed if defendant had been present and objected, the court would still have granted the continuances. Additionally, based on the evidence, the court held that the outcome of trial would have been the same even if the continuances had not been granted."

At our request, the parties prepared supplemental briefs on this issue.

The appeal is now ready for our decision.

MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATIONS

For his first issue on appeal, Andrews contends the district court was in error when it denied his motion to dismiss for speedy trial violations. Andrews alleges both a violation of K.S.A. 2013 Supp. 22-3402(a) and a Sixth Amendment violation of his speedy trial rights because his appointed counsel, Barnett and Sylvester, obtained jury trial continuances without his consent. On a related matter, Andrews also complains that the district court committed statutory and constitutional error by granting his attorneys' motions for trial continuances without his presence in court. That issue will be addressed in the next section.

18

The State has a multi-faceted response. First, the State argues that the Kansas speedy trial statute, K.S.A. 2013 Supp. 22-3402(a), was not violated in this case. Second, the State asserts that, assuming there was a statutory violation, pursuant to K.S.A. 2013 Supp. 22-3402(g) this error does not require reversal of Andrews' convictions. Third, the State claims that Andrews never raised a Sixth Amendment speedy trial violation in the district court and, as a result, this issue was not preserved for appeal. Fourth, if the Sixth Amendment speedy trial issue was preserved, the State argues Andrews' Sixth Amendment rights were not violated. Lastly, as discussed in the next section, the State asserts that any violation of Andrews' statutory and Sixth Amendment right to be present at a critical stage of the proceedings was harmless error.

We will separately analyze whether there was a statutory violation of K.S.A. 2013 Supp. 22-3402(a) and a Sixth Amendment violation of speedy trial rights.

*Violation of Statutory Speedy Trial Rights (K.S.A. 2013 Supp. 22-3402[a])*

The question of whether the State violated Andrews' statutory speedy trial rights raises a question of law over which appellate courts exercise de novo review. *State v. Brownlee*, 302 Kan. 491, 506, 354 P.3d 525 (2015).

Andrews alleges the district court erred in denying his motion to dismiss the criminal case because his trial did not begin within the statutory time period after his January 10, 2014 arraignment, as required by K.S.A. 2013 Supp. 22-3402(a). Instead, his trial began 396 days after arraignment, on February 10, 2015. Andrews blames this statutory speedy trial violation on both Barnett and Sylvester, who, he claims, obtained numerous continuances "without [his] advice and consent."

In Kansas, a criminal defendant's right to a speedy trial is provided in K.S.A. 2013 Supp. 22-3402(a):

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 90 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless [any] delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court."

As the language in K.S.A. 2013 Supp. 22-3402(a) provides, a defendant's statutory speedy trial rights begin at arraignment. *State v. Dupree*, 304 Kan. 43, Syl. ¶ 1, 371 P.3d 862 (2016). Ordinarily, a continuance obtained by the defendant stays the statutory speedy trial calculation. *State v. Vaughn*, 288 Kan. 140, 151, 200 P.3d 446 (2009). Moreover, a defense counsel's actions—including moving for a continuance—"are attributable to the defendant." *State v. Bloom*, 273 Kan. 291, 310, 44 P.3d 305 (2002). However, our Supreme Court has "recognized for speedy trial purposes that an attorney cannot continue a case over a defendant's objection." *Dupree*, 304 Kan. at 49; see also *Vaughn*, 288 Kan. at 144 (defense counsel's actions attributable to defendant "unless the defendant timely voices" disagreement).

Returning to the case on appeal, while the evidence was controverted, it appears that Andrews informed his trial attorneys either in writing or in person that he objected to many of the trial continuances later sought by defense counsel. In the remand court's order, it found that Andrews testified that "if he had been at one of these hearings, he would have demanded a trial." Moreover, according to the remand court, "Mr. Andrews explained, 'I would have made it quite clear that I wanted to proceed with trial.'" As a result, we conclude the district court erred when it attributed numerous trial continuances to the defendant based only on defense counsel's requests. Without computing the exact number of days the district court erroneously attributed to Andrews, we are confident that the 90-day statutory time period was violated in this instance.

Having found statutory speedy trial error, we next consider whether this error was harmless or reversible. K.S.A. 2013 Supp. 22-3402(g) provides:

20

"If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a) . . . and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay."

Our Supreme Court construed this statutory language in *Dupree* and found:

"[Even if the] district court initially attributed [trial] delays to [the defendant] and, . . . further investigation into [the defendant's] claim resulted in those delays being charged to the State, the second sentence of K.S.A. [2013 Supp.] 22-3402(g) leaves [a court] with no grounds to reverse [the defendant's] convictions and dismiss the case against him." 304 Kan. at 51.

On appeal, Andrews attacks this interpretation and claims it "serves to completely undermine and undercut the defendant's right to a speedy trial" because "[i]t allows one provision of the [s]tatute [K.S.A. 2013 Supp. 22-3402(g)] to render another section of the statute [K.S.A. 2013 Supp. 22-3402(a)] void." But, as provided in *Brownlee*:

"[T]he legislature, which created the statutory right [to a speedy trial], has decided to eliminate the remedy for its violation in certain circumstances, providing explicitly that the violation 'shall not be used as a ground for dismissing a case or for reversing [the defendant's] conviction.'" 302 Kan. at 511.

In this case, there is no claim that prosecutorial misconduct resulted in the statutory speedy trial delays. Moreover, as discussed next, we find that Andrews' constitutional speedy trial rights were not violated. Quite simply, the two exceptions stated in the statute are not applicable here. As a result, under K.S.A. 2013 Supp. 22-3402(g) we conclude that under the circumstances, the statutory speedy trial error is not reversible error.

*Sixth Amendment Right to Speedy Trial*

Whether a defendant's Sixth Amendment constitutional right to a speedy trial has been violated is a question of law over which this court has unlimited review. *State v. White*, 275 Kan. 580, 598, 67 P.3d 138 (2003).

In Andrews' original appellate briefing, he primarily focused his Sixth Amendment claim of constitutional speedy trial error on the lengthy period that elapsed from his arrest until trial, and the fact that defense continuances were granted to his attorneys without his consent. In particular, he thoroughly briefed the four constitutional speedy trial factors enunciated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

In the State's original appellate briefing it argued that we should not delve into a *Barker* constitutional speedy trial analysis because Andrews did not raise this issue in the district court. As the State correctly noted: "Defendant specified that he was relying solely on K.S.A. [2013 Supp.] 22-3402, and was *not* raising a Sixth Amendment speedy trial claim." The State points to Andrews' argument during the hearing on his motion to dismiss that Andrews "twice expressly informed the court that he was solely raising a statutory speedy trial claim and was not 'talking about the constitutional right' to a speedy trial."

Andrews acknowledges the problem with the preservation of his constitutional speedy trial claim: "While the defendant's motion [to dismiss] may not specifically address the constitutional provision which protects the defendant's right to a speedy trial, his motion and the objection and his reference to constitutional principles should be construed to protect the defendant's constitutional right to a speedy trial." Andrews also notes that during the hearing he mentioned his constitutional right to be present at

22

continuance hearings while stating "but we don't have to go to that" in emphasizing the statutory violation.

Generally, issues not raised before the district court may not be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Moreover, constitutional grounds for reversal that are asserted for the first time on appeal generally are not properly before the appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

There are, however, several exceptions to this rule, including that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). The United States Supreme Court has determined that the right to a speedy trial is a fundamental right. *Barker*, 407 U.S. at 515 ("[T]he right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States.").

Although Andrews failed to raise the *Barker* four-factor constitutional speedy trial issue in the district court, he did complain of the district court's failure to consider his objection to trial continuances sought by his defense counsel and the requirement that he be present at trial continuance hearings. While Andrews did not clearly frame this as a Sixth Amendment violation of his speedy trial rights, we believe it is appropriate to address all aspects of Andrews' constitutional right to a speedy trial. We will consider Andrews' argument that under *Barker*, he was denied his Sixth Amendment right to a speedy trial.

The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment and § 10 of the Kansas Constitution Bill of Rights, guarantees an accused the right to a speedy trial.

"The United States Supreme Court set forth a balancing test for determining whether an accused has been denied his or her constitutional right to a speedy trial in [*Barker*, 407 U.S. 514]. Kansas adopted this test in *State v. Otero*, 210 Kan. 530, 502 P.2d 763 (1972). The following factors were set forth in *Barker*: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. 407 U.S. at 530." *State v. Mann*, 274 Kan. 670, 701, 56 P.3d 212 (2002).

"None of these four factors, standing alone, is sufficient for finding a violation. Instead, the court must consider them together along with any other relevant circumstances." *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004). We will consider each factor separately.

*Length of the delay*

"The length of the delay between arrest and trial is key to the analysis. Until the delay rises to the level of being presumptively prejudicial, it is not necessary to inquire into the other *Barker* factors." *State v. Davis*, 277 Kan. 309, 334, 85 P.3d 1164 (2004). Whether the delay between arrest and trial is presumptively prejudicial "depends on the peculiar circumstances of each case, and the mere passage of time is not determinative." *State v. Weaver*, 276 Kan. 504, Syl. ¶ 3, 78 P.3d 397 (2003).

What constitutes a presumptively prejudicial delay varies under the circumstances of the case. See *State v. Goss*, 245 Kan. 189, 192-93, 777 P.2d 781 (1989) (delay of a little more than a year was not clearly presumptively prejudicial); *Davis*, 277 Kan. at 336 (15-month delay not prejudicial); *State v. Calderon* 233 Kan. 87, 94-95, 661 P.2d 781 (1983) (13-month delay not prejudicial); *State v. Fink*, 217 Kan. 671, 678-80, 538 P.2d 1390 (1975) (14-month delay not prejudicial).

The acceptable delay for a simple or straightforward case is shorter than the acceptable delay for a complex case. *Weaver*, 276 Kan. at 511. Andrews' trial began almost 16 months after his arrest. He faced 11 felony counts relating to three victims with a prospective sentence of life in prison without parole. See K.S.A. 2013 Supp. 21-6626. But while the case was extremely serious, it was not particularly complex. Seven witnesses appeared for the State during the one-day bench trial. None appeared for the defense. We are persuaded that the 16-month delay, under the circumstances, was presumptively prejudicial.

*Reason for the delay*

Under the second *Barker* factor, this court considers "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

Andrews concedes that "[o]stensibly, the delay stemmed from a desire on the part of [defense] counsel to have more time to prepare the case or because of the unreasonably high caseload of the defense attorney." As summarized in the procedural background, Barnett testified that her purpose in obtaining trial continuances was to engage in plea negotiations. For his part, Sylvester testified that he had a very heavy trial caseload which required the trial to be continued.

The State correctly points out that it "did not request any trial continuances." Moreover, the prosecutor responsible for the case testified at the remand hearing that the State was prepared to try the case at the earliest trial setting. Lastly, there is no claim of purposeful delay by the State. See *State v. Gill*, 48 Kan. App. 2d 102, 114-15, 283 P.3d 236 (2012) (finding no facts in record to support finding State delayed trial in order to hamper defense and this factor weighed in State's favor). We are convinced this factor weighs in favor of the State.

25

*Assertion of right to speedy trial*

The third *Barker* factor considers whether the defendant asserted his or her speedy trial rights. 407 U.S. at 530. As the United States Supreme Court noted, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532.

Andrews contends: "There is no question that the defendant [publicly], privately[,] and repeatedly asserted his right to a speedy trial and objected to any continuances [without] specific consultation and approval." As detailed in the procedural background, Andrews repeatedly invoked his speedy trial rights. We find Andrews' contention to be meritorious. This factor weighs in Andrews' favor.

*Prejudice*

Under the fourth *Barker* factor, this court must assess the prejudice, if any, that Andrews incurred as a result of the trial delay. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532. Courts consider three factors when evaluating prejudice: (1) "oppressive pretrial incarceration"; (2) "the defendant's anxiety and concern"; and (3) "most importantly, the impairment of his or her defense." *Rivera*, 277 Kan. at 118.

On appeal, Andrews complains that the 16 months he spent in jail caused "very real prejudice arising from the stress and anxiety which would naturally result from continued delay and a lack of knowledge of one's fate." But Andrews does not cite any place in the record on appeal where he provided proof of these claims. We are left with an assertion without any evidentiary support.

26

Andrews' extensive experience with the criminal justice system, however, belies his claim that his incarceration caused undue anxiety or concern. Andrews had an A criminal history score that included prior convictions for unlawful sexual intercourse with a minor in 1992 and 1995, and rape and sodomy in 2003. In *Rivera*, the Kansas Supreme Court found a defendant's C criminal history score demonstrated that he had experience with the criminal justice system which limited the prejudice stemming from his prolonged incarceration. 277 Kan. at 118-19. Our court in *State v. Jackson*, No. 112,845, 2016 WL 6140969, at *5 (Kan. App. 2016) (unpublished opinion), reached a similar conclusion regarding a defendant with a B criminal history score. Andrews' extensive criminal history similarly undermines his argument that the trial delays resulted in prejudicial anxiety or concern.

Andrews also asserts that he was prejudiced in his ability "to defend himself as memories fade, as does the availability of witnesses and the ability of the defense team to have access to the scene of the alleged crime in any manner which would resemble the scene at the time of the alleged crime." Once again, Andrews made no showing in the district court to support these assertions. Additionally, Andrews does not identify any defense witnesses he intended to call who were unavailable at the time of trial. Indeed, the only witnesses at trial were State's witnesses whose memories, if fading due to the passage of time, would seemingly not prejudice Andrews but the State. Finally, Andrews does not explain how the crime scene, which was his residence, was unavailable to defense counsel simply because Andrews was incarcerated. Moreover, the relevance and importance of having access to the residence to defend against the charges is unstated.

In summary, we are persuaded that the delays in commencing the trial did not prejudice Andrews. This factor weighs in favor of the State. Finally, applying the four *Barker* factors to the totality of circumstances in this case, we are convinced the numerous continuances of the trial did not violate Andrews' Sixth Amendment right to a speedy trial.

27

In his initial appellate brief, Andrews also claimed a violation of his statutory and constitutional right to be present for any hearings on motions to continue the trial. In his supplemental briefing, Andrews asserts that the violation of his right to be present at all critical stages of the proceedings was not harmless error. For its part, the State counters that the evidence produced at the remand hearing demonstrated that any error in granting the trial continuances without Andrews' presence in the courtroom was harmless error.

As summarized in the procedural section, after the filing of *Wright I*, we remanded this case to conduct an evidentiary hearing to determine if Andrews' failure to be personally present at continuance hearings resulted in reversible or harmless error. After the hearing, the district court concluded that Andrews was not present at any of the 10 hearings when defense counsel requested trial continuances despite Andrews' request to be present at the hearings in order to object to any delays. The district court concluded that "'in all ten of those situations the defendant's right to be present was violated.'"

Preliminarily, the State argues that

"there is strong evidence that [Andrews] acquiesced in the continuances because he understood that they would allow Barnett to engage in plea negotiations, and would allow Sylvester time to prepare. This indicates that [Andrews] would not [have] objected had he been present in court when the continuances were requested by his attorneys."

Our standard of review provides that an appellate argument regarding a criminal defendant's right to be present at a critical stage of the trial proceedings is an issue of law over which an appellate court exercises unlimited review. *Wright I*, 305 Kan. at 1178.

Andrews had both a statutory and constitutional right to be present during the trial continuance hearings. K.S.A. 22-3405(1) provides that "[t]he defendant in a felony case shall be present . . . at every stage of the trial . . . except as otherwise provided by law." K.S.A. 22-3208(7) generally provides a defendant with a statutory right to be present at a motion hearing. Of particular relevance to this appeal, our Supreme Court has confirmed that this statutory right applies to a hearing on a motion to continue trial. *Dupree*, 304 Kan. at 49-50 ("[W]e recently confirmed a defendant must have an opportunity to be present to express disagreement with a continuance because a defendant's disagreement matters in the statutory speedy trial analysis."); *Brownlee*, 302 Kan. at 508. Moreover, our Supreme Court has found that a district court commits a statutory speedy trial error when the defendant is not present at a hearing on a motion to continue trial in order to voice an objection. 302 Kan. at 508.

Additionally, the Sixth Amendment guarantees that "a criminal defendant may be present at every critical stage of his or her trial." *State v. King*, 297 Kan. 955, 968, 305 P.3d 641 (2013). After *Wright I* it is established that a criminal defendant has a statutory and constitutional right to be present at trial continuance hearings. 305 Kan. at 1178.

At the evidentiary remand hearing, the district court found that "Andrews' right to be present at the continuance hearings was violated by not allowing Mr. Andrews to be present for multiple trial continuance requests." In particular, the district court found there were 10 hearings where defense counsel requested continuances without the district court considering Andrews' objections to any delay. The district court concluded "'either upon the [State's] stipulation or the lack of evidence presented by the State that in all ten of those situations the defendant's right to be present was violated.'"

We find no error in the remand court's legal conclusion that the district court erred in not requiring Andrews' presence at the trial continuance hearings. The question then arises:  Did Andrews' failure to be personally present to object at the continuance

29

hearings result in harmless or reversible error? Stated another way, if Andrews had been personally present in court to object to one or more trial continuances is there a reasonable possibility that the outcome of the trial would have been affected? See *Wright I*, 305 Kan. at 1179.

To answer this question, we apply a constitutional standard that

""error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221.'" *Wright I*, 305 Kan. at 1179.

Consistent with *Wright I*, our court remanded the case on January 2, 2018, for an evidentiary hearing to address

"whether the State has proven beyond a reasonable doubt that the violation of Andrews' constitutional and/or statutory right to be personally present at one or more trial continuance hearings did not affect the outcome of the trial in light of the entire record[,] i.e., whether there is no reasonable possibility that the error contributed to the verdict. See *Wright*, 305 Kan. at 1179; *State v. Ward*, 292 Kan. 541, Syl. ¶ 2, 256 P.3d 801 (2011). As a part of this inquiry, evidence should be presented regarding whether Andrews' presence in the courtroom during any trial continuance hearing would have made a difference in the district court's decision to grant a trial continuance."

Upon remand, the district court held a hearing in which Andrews and the prosecutor in charge of the criminal case, Justin Edwards, testified. Based on the court file, testimonial evidence, and the district court's own knowledge of the trial continuances, the court concluded that if Andrews had been personally present to object to defense counsel's motions to continue trial, the court would still have granted the continuances. According to the remand court, based on the entries made in the court files,

and the testimony of Andrews and Edwards, "this information does show the Court that Mr. Andrews' presence would not have impacted this Court's decision to continue the case at any of the ten hearings."

Of note, the remand judge candidly acknowledged the significance of the *Dupree* opinion which was issued in 2016—and established that a defendant must have an opportunity to be present in court to express disagreement with a trial continuance— referring to it as "a shot over my [b]ow and the [b]ow of every jurisdiction as far as I can tell and it changed the way we do business here." But the district judge explained its rationale based on its understanding of Kansas law and criminal court proceedings in Sedgwick County in 2014:

"But in 2014 I would have given extreme, great deference to the trial lawyer and their determination as to when they were ready to try the case. I understand that a lazy trial lawyer can take advantage of that. I certainly during this time tried to keep my eyes open for that. I can't sit here and articulate the basis for my decision on each of these continuances as to why I continued them. I can only tell you that my standard was good cause shown and in each of these cases I determined that there was good cause shown by the attorney, in both cases by Ms. Barnett, and subsequently Mr. Sylvester who had to take over the case, start all over, to continue the case. That was based upon the severity of the charges in this case. The extreme penalty, which you know, is arguably justified that was passed by the legislature with regard to, quote, Jessica's Law violations, unquote."

Moreover, the remand court also referenced the heavy caseloads of appointed defense counsel during that time period as another reason to justify granting good cause trial continuances requested by defense counsel, over the objections of defendants:

"[B]ut I can just tell you that part of what I had to consider during this time period was the massive caseloads that were being handled by all the lawyers and the necessity in my belief, especially in a case where somebody could go to prison for the rest of their natural

31

life, that those lawyers be prepared and be able to focus enough on a particular case to do their client justice when it ultimately went to trial."

On appeal, Andrews claims that the district court's finding in this regard is "speculative at best" and "[a]t worst, the finding represents an indiscretion on the part of the court." We disagree. There was evidence that Barnett and Sylvester sought trial continuances in order to facilitate plea negotiations, prepare for trial, or accommodate a busy trial schedule. Our review of the record, especially on remand, persuades us that there was substantial competent evidence to support the district court's finding that Andrews' personal presence in court to object to defense counsel's motions to continue trial would have been unavailing. The trial continuances would have been granted regardless of Andrews' in-court objections.

There is a second reason the remand court found harmless error: Based on the evidence, the court held that "the outcome of trial would have been the same even if the continuances had *not* been granted." (Emphasis added.) The district court, citing Edwards' testimony in support, found that if Andrews "had requested a trial to proceed at once it would have been." The district court noted Edwards' testimony that "'[i]f things need to be done, we can move it two or three weeks and call it for trial, and that's routine because we have enough attorneys that that's something we can do.'"

At the remand hearing, it was established that arraignment was on January 10, 2014. For statutory speedy trial requirements, this meant that—absent valid continuances by Andrews—the 90-day speedy trial deadline for in-custody criminal defendants expired on April 10, 2014. The first jury trial setting and first trial continuance by Barnett was on March 3, 2014. On this date, the trial was continued until April 7, 2014, only 3 days before the expiration of the 90-day deadline, if no continuance had been attributed to the defense.

Edwards testified that if, on March 3, 2014, Andrews personally objected to his defense counsel's motion to continue, given the 90-day time period, he would have asked that trial be set over only two or three weeks until March 24, 2014, rather than April 7, 2014, to allow for preparation of pretrial motions. Edwards explained why he would have asked for an earlier trial setting: "Things happen, if I got sick or a witness got sick on the morning of [March 24, 2014] I would still have the ability to bump the case one or even two weeks and still be within the 90 days."

On the other hand, Edwards testified that if, on April 7, 2014, the district court had granted Andrews' personal request for a speedy trial, and 87 days of the speedy trial period was arguably attributed to the State, "I would have said, give me a court now and let's start picking a jury." Edwards explained that his prosecution case was as strong at the preliminary hearing as it was at trial:

> "[A]t the end of the day, I had three girls who were all caught either in photographs or videos in naked—state of nudity, in sexual activity with the defendant. There were text messages between the defendant and [R.M.] where they were talking about sexual things, about meeting up and, in fact, he took her away from school one day, they went and he photographed their sexual interactions. [T.H.] was captured on video engaging in oral sex with the defendant. [A.C.] was in different photographs and videos naked. So at the end of the day, this was a very strong case that if [Andrews] had come in at any time and said I'm ready for trial, I would have been able to go to trial in very short order because of the strength of this case."

We find substantial competent evidence in support of the remand court's finding that if Andrews had been personally present and successfully objected to his defense counsel's motion to continue trial on March 3, 2014, the State would have sought a trial setting of only two or three weeks and proceeded to trial prior to the expiration of the 90-day speedy trial deadline. See *State v. Wright*, 307 Kan. 449, 458, 410 P.3d 893 (2018) (*Wright II*) (The most likely outcome was that had the defendant been present and

33

objected to defense counsel's continuance, it would have been charged to the State and trial continued for a setting within the 90-day speedy trial deadline.). Moreover, we are persuaded by Edwards' testimony that as of the date of the preliminary hearing the State was ready, willing, and able to present its case at trial within a short period of time. As a result, any denial of defense counsel's motions to continue would have resulted in a trial within a matter of weeks rather than months in order to comply with any speedy trial deadlines.

On appeal, Andrews asserts the State failed to prove that the errors did not affect the outcome of the trial considering the entire record. Andrews argues that had he been allowed to argue his opposition to defense counsel's motions to continue trial "it is unlikely that the defendant would have had the same objection to his attorneys." As a result, Andrews claims "it is unlikely that he would have sought to proceed pro se." Yet, ultimately Andrews withdrew his request to proceed pro se and, as of the first day of trial, he was represented by Sylvester at trial, postsentencing, and sentencing. This assertion of reversible error lacks factual support.

Additionally, Andrews states: "In order to determine whether the verdict would be the same, one must consider whether it is likely that the defendant would have waived his right to trial by jury had [Andrews been given] the opportunity to be present and voice his objection to a continuance." But Andrews does not point us to any record evidence where he testified that he would not have waived his right to a jury trial if he had been allowed to be present in court to state an objection to a trial continuance. Andrews testified at the remand hearing that he had an opportunity to express this view but our reading of his testimony indicates that he did not testify regarding this assertion. On the other hand, the record shows that the district court thoroughly questioned and admonished Andrews at the time he made his request to proceed pro se and, at that time, Andrews was resolute that he wished to represent himself. Again, we find no factual support for Andrews' argument.

34

Lastly, Andrews points out that T.H. was not available at the time of trial and, had the trial not been continued earlier, she may have been available as a witness. According to Andrews: "The fact is that it cannot be said with any degree of certainty, let alone with beyond a reasonable doubt accuracy, how T.H.'s presence may have changed the outcome of the trial." But Edwards testified that, if anything, T.H.'s absence was detrimental to the State and benefitted Andrews.

In assessing the impact of T.H.'s unavailability at the time of trial, the remand judge recalled "the State pointed out in their testimony the issue was not whether the sex was consensual or not. The issue had to do with the images. And the evidence, as I understood it, the images were there and it was simply a matter of the images existed of both the defendant and this victim."

We can find no error in this finding. At the conclusion of the trial, the trial judge characterized the evidence pertaining to T.H. as "overwhelming" because the videos "clearly indicate or show or depict [T.H.] engaging in sexually explicit conduct and it is done with the intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the defendant or any other person." Given that Andrews was charged with sexual exploitation of T.H., the videos were the best evidence of the commission of the crimes. Moreover, Andrews does not explain how the personal presence of one of his victims would have benefitted him at trial. Rather, he candidly concedes the speculative nature of his claim. All things considered, given the incriminating videos which memorialized the sexually explicit conduct by Andrews involving T.H., we are satisfied that the outcome of the trial would have been unaffected by T.H.'s personal presence in the courtroom.

We conclude that on the facts of this case, the denial of Andrews' right to be present in court when trial continuances were requested by defense counsel against his wishes was harmless error. Had Andrews been present and objected to any of the

35

continuances requested by defense counsel, there were two possible outcomes. First, the district court would have granted the continuances despite Andrews' objections. Second, if the district court had not granted defense counsel a continuance because of Andrews' objections, given the strength and state of preparation of the State's case, the State would have been able to try the case within the initial 90-day statutory speedy trial period or any subsequent speedy trial deadlines. In either scenario the error would have been harmless.

CONFLICT-FREE COUNSEL

Andrews next contends the district court erred by permitting the defendant to proceed to trial and other critical proceedings without conflict-free counsel. This allegation relates to both Barnett and Sylvester. After setting forth a brief summary of the relevant law we will individually consider the two claims.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall . . . have the [a]ssistance of [c]ounsel for his [defense]." The United States Supreme Court has held this provision "requires effective assistance of counsel at critical stages of a criminal proceeding [and] . . . [t]he constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).

Included in this right to effective counsel is the right to conflict-free counsel. *State v. Prado*, 299 Kan. 1251, 1256, 329 P.3d 473 (2014). Kansas courts have found a defendant is entitled to conflict-free counsel not only at trial, but also at other critical pretrial stages, such as a preliminary hearing, an arraignment, and sentencing. *State v. Bristor*, 236 Kan. 313, 317, 691 P.2d 1 (1984); *State v. Donaldson*, No. 109,671, 2014 WL 4080074, at *4 (Kan. App. 2014) (unpublished opinion).

36

A criminal defendant does not have an absolute right to substitute counsel. *State v. Pfannenstiel*, 302 Kan. 747, 759, 357 P.3d 877 (2015). Consequently, a defendant who wishes to replace his or her existing counsel "must show justifiable dissatisfaction with his or her appointed counsel, which can be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant." *State v. Brown*, 300 Kan. 565, Syl. ¶ 3, 331 P.3d 797 (2014). A motion to dismiss counsel triggers a district court's duty to determine whether there is a conflict of interest. See 300 Kan. at 574.

When conducting a conflict of interest analysis, a district court can potentially commit any of three errors, each one of which appellate courts review for an abuse of discretion. See 300 Kan. at 576. The first error occurs when the district court becomes aware of a potential conflict of interest between a defendant and his attorney but fails to conduct an inquiry. *Pfannenstiel*, 302 Kan. at 761. The second error occurs when a district court investigates a potential conflict but fails to conduct an appropriate inquiry. 302 Kan. at 761. "An appropriate inquiry requires fully investigating (1) the basis for the defendant's dissatisfaction with counsel and (2) the facts necessary for determining if that dissatisfaction warrants appointing new counsel, that is, if the dissatisfaction is 'justifiable.'" 302 Kan. at 761. Finally, a district court can abuse its discretion when determining whether to substitute counsel. 302 Kan. at 762. On appeal, Andrews does not identify the specific category of conflicts of interest error which he claims was violated in this case.

*Sharon Barnett's Legal Representation*

After the district court appointed Barnett to represent Andrews, she represented him at the evidentiary preliminary hearing held on January 9, 2014, and his arraignment the next day. As detailed on pages 5 to 18 in the Procedural Background section,

thereafter, Andrews sent Barnett letters asking that she not request trial continuances without his consent in open court.

About six months later, Andrews filed a pro se motion to dismiss Barnett as his attorney claiming ineffective assistance of counsel, continuing the trial without his consent, and violating his right to a speedy trial. A hearing on the motion was held on July 25, 2014. The district court determined there was no basis to discharge Barnett because she had consulted with him regarding trial continuances and Andrews had no right to personally appear in court regarding those matters.

Andrews filed a motion to reconsider and informed the district court that he had filed a complaint against Barnett with the Office of the Disciplinary Administrator. Following a hearing on August 1, 2014, the district court denied the motion to reconsider, concluding that any breakdown in communication was attributable to Andrews. Shortly thereafter, Andrews filed another pro se motion to dismiss Barnett which was considered by a different district judge. On this occasion, the motion was granted.

On appeal, Andrews contends that due to his disputes with Barnett over trial continuances:

> "[D]uring the introduction of [preliminary hearing] testimony of T.H. at trial Mr. Andrews was, in effect, represented by counsel who had an inherent conflict of interest in violation of the defendant's right to be conflict free counsel.
> "The defendant was denied his right to the assistance of conflict free counsel at a crucial portion of the trial, namely, the cross examination of T.H."

The State notes the chronology of events is dispositive of this claim. In particular, Andrews filed his first motion to dismiss Barnett six months *after* the preliminary hearing, complaining about trial continuances that were sought by Barnett *after* the preliminary hearing. According to the State, "assuming arguendo that [Andrews] and

38

Barnett ultimately were not on the same page regarding trial continuances, that disagreement did not arise until well after the preliminary hearing."

The State's argument is meritorious. Barnett's representation of Andrews at the preliminary hearing occurred prior to any claimed conflict of interest over her handling of subsequent trial continuances. Andrews provides no legal precedent in support of his novel claim that because Barnett handled the preliminary hearing—when she did not have a conflict with Andrews over trial continuances—the mere fact that a transcript of T.H.'s preliminary hearing testimony was later admitted at trial means that she was representing Andrews during trial and after her dispute with Andrews over trial continuances.

Of course, Sylvester—not Barnett—represented Andrews at trial. The fact that a transcript of T.H.'s preliminary hearing testimony was admitted as evidence at trial does not create a conflict of interest with Barnett or prejudice Andrews. We find no error.

*Bradley Sylvester's Legal Representation*

On appeal, Andrews also contends he was deprived of his right to conflict-free counsel during the criminal proceedings when he was represented by Sylvester either as counsel or standby counsel. While his brief is not a model of clarity, Andrews argues that the district court erred in its denial of Andrews' two pro se motions to dismiss Sylvester as appointed counsel.

The State counters that no conflict of interest occurred because, although disagreements about trial continuances and communications occurred between Andrews and Sylvester, these disagreements "did not rise to the level of a conflict of interest." Moreover, with regard to the second claimed conflict which occurred a few days prior to the actual bench trial, the State observes that Sylvester in responding to the inquiries

made by the district court and Andrews "did not compromise any confidential information, concede defendant's guilt, or establish that he had any interest that materially limited his representation of defendant." Finally, the State points out that on the day of trial, rather than proceed pro se, Andrews specifically requested the district court to reappoint Sylvester as lead counsel to represent him at trial.

The detailed facts of Sylvester's representation and Andrews' motions to discharge him are set forth in the Procedural Background section at pages 5 through 18. We will consider the two pro se motions separately. The first pro se motion to dismiss Sylvester was filed on January 7, 2015. In the motion, Andrews claimed that Sylvester had moved to continue the trial without Andrews' consent or presence in court, and that he had failed to discuss the case with him.

At the January 16, 2015 hearing on the motion, Andrews acknowledged Sylvester's reputation as a "very good attorney" but complained that he was not spending enough time preparing for trial or meeting with Andrews. In response to the district court's questions, Sylvester mentioned he was under a great press of business but that he had worked on the case and he was "not sure if there is a conflict." Ultimately, Andrews agreed with the district court that he did not have an objection to Sylvester's continued representation provided Sylvester spent more time consulting with Andrews and preparing for trial. The district judge denied the motion saying to Andrews, "I think you're happy with Mr. Sylvester, as long as he gives you the time needed to prepare." Andrews agreed with the district court. The case was then set for trial 10 days later, on January 26, 2015.

Andrews complains that during this hearing, he was required to either represent himself or rely on Sylvester who had an inherent conflict of interest in being accused of ineffective assistance of counsel.

Andrews has failed to meet his burden to show an abuse of discretion in this instance. The district court considered Andrews' pro se motion and made appropriate inquiries into Andrews' dissatisfaction. This initial inquiry did not require the appointment of separate counsel for Andrews. The district court's questions posed to Andrews and Sylvester were required and appropriate to ascertain the nature and extent of the problem. See *Pfannenstiel*, 302 Kan. at 761. Importantly, Sylvester essentially agreed with Andrews' complaints and did not argue in opposition to the pro se motion. Under these circumstances any disagreement between Sylvester and Andrews did not rise to the level of a conflict of interest. See *State v. McGee*, 280 Kan. 890, 896, 126 P.3d 1110 (2006).

We are convinced there was no apparent conflict because the district court concluded, and Andrews agreed, that he was content with Sylvester's representation provided the attorney spent additional time preparing for trial. We find no error in the district court's ruling that no conflict existed.

Andrews complains of a second instance where he sought dismissal of Sylvester due to a conflict. On January 26, 2015, Sylvester filed a motion to dismiss the criminal case due to speedy trial violations caused solely as a result of Barnett's representation. A hearing was scheduled on the motion only three days prior to trial. At the February 6, 2015 hearing on the motion to dismiss, however, Sylvester informed the district court that Andrews had just filed a new pro se motion entitled, "Motion for Immediate Removal of Ineffective Assistant Counsel and Appoint Standby Counsel." Significantly, this motion was filed only four days prior to the commencement of trial. In this motion, Andrews now asserted that Barnett *and* Sylvester had violated his rights to a speedy trial. The motion asked the district court to allow Andrews to represent himself and to appoint standby counsel.

41

At the hearing, Andrews complained that Sylvester had continued the trial three times without his consent or presence in court. Andrews sought a bench trial and advised the district court that he could argue his own pro se motions including the speedy trial motion. In response, the prosecutor said this motion had been previously ruled on and, referencing the prior hearing on the motion, noted that Andrews was satisfied with Sylvester's representation provided the attorney was prepared to try the case.

Once again, the district court made inquiry into any potential conflict. For his part, Sylvester indicated that at his initial visit, he advised Andrews that because of a "glut of huge trials" his trial would be delayed. Although Sylvester acknowledged that Andrews was not present in court when he sought trial continuances, he indicated that he had provided Andrews with discovery materials and corresponded with him.

The district court summarized Andrews' requests: "[T]o represent yourself, to have me appoint somebody completely blind to the case to be shadow counsel, to waive jury trial and to proceed to bench trial on Monday." Andrews replied, "Yes. Yes, sir. That's correct." Following a long and extensive colloquy with Andrews, however, the district court confirmed the defendant now indicated that he wanted the court to appoint Sylvester as the standby counsel for trial. The district court granted the request while cautioning Andrews that it would not delay the trial if Andrews decided that he wanted new counsel.

At the conclusion of the lengthy colloquy, the district court and Andrews had the following exchange:

> "THE COURT:  . . . . What is your desire with respect to your wish to represent yourself?
> "THE DEFENDANT:  I would like to represent myself and retain Mr. Sylvester as my—

42

"THE COURT:  Standby counsel?

"THE DEFENDANT:  Yes, sir.

"THE COURT:  All right. Well, the Court will grant your motion then. You are now representing yourself. Mr. Sylvester will be here to assist you to the extent that you feel like you need assistance, but you're in charge of the case. Do you understand that?

"THE DEFENDANT:  Yes sir."

The district court proceeded to hear from Andrews on the motion to dismiss regarding Barnett, whereupon the pretrial hearing was adjourned until Monday of the next week to allow Andrews to review other motions and offer any witnesses.

On Monday, February 9, 2015, the district court resumed the pretrial hearing to permit Andrews to present evidence and argue his motions. When Andrews called Sylvester as a witness in support of his pro se motion regarding Sylvester's speedy trial violations, Andrews insisted on testimony rather than a proffer. Andrews explained,

"This is the reason I want to put [Sylvester] on the stand, so I can get it in the record and ask him very simple questions:  Did he continue the jury trial and the dates and was I made aware of it, did he come talk to me about it. It's very simple things."

While Sylvester and the prosecutor expressed unease as to the potential for a conflict of interest if Sylvester, as standby counsel, testified, Andrews countered that all he was asking Sylvester about were the dates of the continuances prior to the expiration of the statutory speedy trial deadline. The district court allowed Andrews to question Sylvester with the caveat that it would then determine if Sylvester could continue as standby counsel. For his part, Andrews stated, "I don't think there's a problem."

On direct examination, Andrews established that Sylvester had sought three trial continuances but, other than Sylvester's initial meeting when he told Andrews that the trial would need to be continued due to his busy schedule, he did not ask Andrews to

43

approve any specific continuance, and Andrews was never present in court for the hearings. In essence, Sylvester's testimony was a reprise of his statements to the court at the hearing on Andrews' first motion to dismiss counsel. According to Sylvester, until the Friday hearing, he understood that Andrews was agreeable to pursuing the speedy trial motion only with regard to Barnett's representation, not Sylvester's.

Upon the completion of evidence, Andrews asked for appointment of new standby counsel to argue his motion to dismiss. The request was denied. Because the district court did not consider Sylvester as standby counsel for the pro se motion, it permitted Andrews to argue his motion to dismiss the case due to a violation of his statutory right to speedy trial. After argument, the district court denied Andrews' motion.

Before proceeding to other motions, the district court asked Andrews if he felt there was a conflict to prevent Sylvester from representing him as standby counsel on the pretrial motions and trial. Andrews was ambivalent. The district court reminded Andrews that at the end of the Friday proceeding he had told the court that he agreed to have Sylvester as standby counsel. Andrews inquired about the possibility of appointing new standby counsel but the district court replied that there was nothing to prohibit Sylvester from serving as standby counsel. The district court informed Andrews that he could proceed pro se with or without Sylvester as standby counsel. Andrews replied, "If you're not willing to give me a new standby counsel then I will keep Mr. Sylvester." Andrews then proceeded to argue his remaining pretrial motions.

On Tuesday, February 10, 2015, the case was scheduled for bench trial with Andrews appearing pro se and Sylvester as standby counsel. Andrews informed the district court that because he was not an attorney he was "not able to defend myself properly at this time, so I am requesting that Mr. Sylvester be reinstated as the lead on this case." Upon inquiry, Sylvester agreed to represent Andrews. The district court

approved the arrangement. Sylvester represented Andrews throughout the trial, posttrial, and sentencing.

On appeal, Andrews complains there was a conflict of interest in having Sylvester as standby counsel when Andrews was seeking his removal from the case. Moreover, Andrews complains that

"[o]nce trial commenced, Defendant requested that his standby counsel resume duties as trial counsel. Accordingly, Defendant was represented at [trial] by an attorney who the defendant had accused of providing ineffective assistance of counsel and of violating (or at least failing to protect) his statutory and constitutional rights. As such, the defendant was represented at trial by counsel who was hampered by a conflict of interests."

In response, the State notes that Andrews failed to cite any legal precedent in support of the notion that a conflict requiring the dismissal of counsel existed simply because of a dispute between Andrews and Sylvester regarding trial continuances. The State also cites legal authority in support of its claim that just because an attorney testifies at a hearing to dismiss counsel does not necessarily mean that a conflict of interest exists between the defendant and the attorney.

In his brief, Andrews does not dispute that the district court conducted a proper inquiry into Sylvester's potential conflict of interest during the February 9, 2015 hearing. Instead, Andrews contests the court's decision to not remove Sylvester as standby counsel in the case. Andrews proposes that calling an attorney to testify against his or her client at a hearing for ineffective assistance of counsel—or any other motion that puts a defendant at odds with his attorney—creates an irreparable conflict of interest which requires that the attorney be replaced with new counsel.

To be clear, at the time Andrews filed his second motion to dismiss counsel, on February 6, 2015, he was represented by Sylvester. At the conclusion of that hearing, and

45

at the request of Andrews, Sylvester had been relieved of his duties as counsel, and Andrews was proceeding pro se for the rest of the pretrial motions and trial. Then—at Andrews' request—Sylvester was appointed as standby counsel for Andrews.

We fail to find error in the district court's ruling granting Andrews' motion to proceed pro se with Sylvester as standby counsel. Upon proper inquiry, the district court was apprised of Andrews' complaints regarding the issue of trial continuances. The district court denied Andrews' motion to dismiss for violation of speedy trial rights. While the district court erred in this ruling, we have found that error to be harmless. As of the February 6, 2015 hearing, Andrews was afforded his constitutional right to represent himself, and his request for Sylvester to serve as standby counsel was granted by the district court. On this record, we discern no conflict of interest and no error. The district court ruled in Andrews' favor.

The next occasion when Andrews complains of a conflict of interest was three days later, on February 9, 2015—the day before trial—when he insisted that Sylvester, as standby counsel, testify under questioning by Andrews, acting in his pro se status, in support of Andrews' pro se motion to dismiss Sylvester for speedy trial violations related to his representation. Not surprisingly, the district court, the prosecutor, and Sylvester raised concerns regarding this procedure, with the court ultimately concluding that it would listen to Sylvester's testimony and determine if it created a conflict of interest. In the end, the court determined that the nature of the testimony was not in conflict with the legal interests of Andrews.

The district court made a full inquiry regarding the propriety of Andrews questioning Sylvester about speedy trial issues. At the outset, Andrews wanted to conduct his criminal defense pro se. Obviously Andrews had a Sixth Amendment constitutional right to represent himself in this criminal litigation. See *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed 2d 562 (1975). Moreover, the district court was

46

empowered to appoint standby counsel to assist Andrews in his pro se defense. *McKaskle v. Wiggins*, 465 U.S. 168, 170, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). Andrews believed he needed Sylvester's testimony to establish the factual predicates for a speedy trial claim. Of course, there are potential perils in a pro se litigant questioning a standby counsel regarding matters involved in that counsel's prior representation.

In *Pfannenstiel*, Pfannenstiel argued that a conflict of interest arose when his court appointed attorney was questioned by the district court. Pfannenstiel argued that a new counsel should have been appointed to avoid a conflict when he sought dismissal of his counsel and appointment of substitute counsel. Our Supreme Court noted, however, that Kansas and federal caselaw frequently found that questions are propounded to counsel in order to make a full and appropriate inquiry into whether a conflict exists. The Supreme Court noted an important distinction between an attorney truthfully recounting facts and an attorney going beyond factual statements and advocating against the client's position. 302 Kan. at 766.

Similarly, in *McGee*, 280 Kan. at 894-96, our Supreme court dismissed the defendant's claim that a conflict of interest arose at a hearing on a pro se motion for new counsel when the defense attorney contradicted the defendant's factual assertions. At the hearing, the defense attorney contested McGee's claim that he had "'a great lack of concern for [my] case'" with a list of times during which the two had met to discuss the case. 280 Kan. at 894-95. The court found this factual contradiction "did not compromise any confidential information, concede McGee's guilt, or establish that McGee's counsel had any interest that materially limited his representation of McGee." 280 Kan. at 896. Instead, this factual dispute was a simple disagreement that did not "rise to the level of a conflict of interest." 280 Kan. at 896.

Here, the questions propounded by Andrews and the answers provided by Sylvester involved factual matters regarding the number and dates of trial continuances,

47

and whether Andrews was given the opportunity to object to Sylvester's continuances in court. Our review of the transcript shows both Sylvester and Andrews essentially agreed to the factual matters that Andrews was most concerned about regarding his motion. Sylvester's responses did not disclose confidential information, concede Andrews' guilt, or establish that Sylvester had any interest that materially limited his standby representation of Andrews. See 280 Kan. at 896.

*Pfannenstiel* and *McGee* provide important guidance in resolving this specific question. Under the circumstances, we are persuaded that the district court did not abuse its discretion in permitting Andrews, who was proceeding pro se, to question his standby counsel, Sylvester, regarding Andrews' pro se motion to dismiss.

On the first day of trial, Andrews sua sponte asked the district court to set aside its prior order allowing Andrews to proceed pro se with Sylvester as standby counsel, and to reinstate Sylvester as trial counsel. This waiver of Andrews' right to represent himself must be given full and serious consideration by the district court. See *State v. Vann*, 280 Kan. 782, 794, 127 P.3d 307 (2006); *State v. Rassel*, No. 107,336, 2013 WL 1688930, at *3 (Kan. App. 2013) (unpublished opinion) (The weight of authority seems to recognize that a criminal defendant's decision to opt for self-representation is not irrevocable and may be rescinded absent demonstrated bad faith or a serious disruption of the judicial process.).

Moreover, Andrews' prior motion to dismiss Sylvester was primarily focused on the speedy trial issue. We have considered that issue earlier and have concluded the remand court did not err in finding the improper delays had no effect on the verdict. Sylvester's actions in requesting trial continuances were harmless. Although the trial continuances were a point of frustration for Andrews, nothing suggests that this issue rose to the level of a conflict of interest at any time during the criminal proceedings.

48

In our review of the record, we find little to suggest that Andrews believed, other than the disagreement regarding trial continuances, Sylvester was not prepared to defend him at trial. Andrews' decision to abandon his pro se endeavor and request that Sylvester return as trial counsel seems reasonable, and Andrews has not shown us where Sylvester's trial representation was ineffective or inadequate.

On the morning of trial, Andrews voluntarily withdrew his request to represent himself and asked Sylvester to represent him in the remaining criminal proceeding. On this record, Andrews does not show any error in the district court's ruling granting his request and reappointing Sylvester as trial counsel. The district court did not abuse its discretion.

## ADMISSIBILITY OF TRANSCRIPT OF T.H.'S TESTIMONY AT TRIAL

Andrews appeals the district court's admission of a transcript of T.H.'s testimony at trial upon the district court's determination that T.H. was unavailable to personally appear at trial. Although not clearly stated, it appears that Andrews is objecting to both the district court's finding of unavailability under K.S.A. 60-459(g)(5) and raising a Sixth Amendment constitutional confrontation claim.

Of note, Andrews candidly concedes that if the transcript was improperly admitted, the evidence did not relate to his three convictions for aggravated indecent liberties with R.M. As a result, this claim of error does not relate to or affect those three convictions.

For its part, the State objects to our consideration of the statutory unavailability issue because it was not objected to in the district court and, therefore, was not preserved for appeal. Alternatively, the State asserts that T.H. was unavailable and that the

49

transcript of her testimony was properly admitted at trial because Andrews had the opportunity to confront and cross-examine her at the preliminary hearing.

Sometime in August or September 2014, T.H. ran away from a group home under the supervision of the St. Francis agency in Riley County, Kansas. The agency did not inform the State that T.H. had run away until February 5, 2015, when the State contacted the agency to schedule her trial testimony beginning on February 10, 2015. The State relayed this information to the trial court and, on the day of trial, February 10, 2015, the prosecutor moved the court to find T.H. unavailable as a witness and to admit the transcript of her preliminary hearing testimony in evidence instead. The prosecutor advised:

"[T.H.] testified at the preliminary hearing and was subject to cross examination by the defendant's counsel at that time. Since that point in time, she had been placed either in a foster home or a placement, a group home placement, in Riley County, Kansas. We were notified by the agency that she ran from that placement, that she was reported as a runaway by St. Francis, the agency that's responsible for her custody and care. She was entered into the NCIC database as a runaway.

"The agency was able to provide us with some information that [T.H.] was sighted in Wichita or had been seen in Wichita. This office requested from law enforcement to put out an ATL to find her, that being specifically an attempt to locate, which is essentially a way to notify the entire Wichita Police Department that if this individual is found they are not only wanted for court but that she was a runaway. She would have been detained. Specifically, officers were actively looking for her over the course of this weekend in an attempt to find her here in Sedgwick County. There was contact with the—by Detective Nagy, who is the detective responsible for runaways here in Wichita, with the National Center for Missing and Exploited Children to see if any other jurisdictions had had contact with her and they had not."

Sylvester responded to the State's motion by asking for clarification of how long T.H. had been missing. The prosecutor replied that she had been missing since August or

September 2014. The prosecutor related that she personally knew of a Wichita officer who told her that other officers were actively looking for T.H. over the weekend in Wichita to no avail.

Sylvester responded that he was "not going to dispute the fact the State found out last Thursday" but he complained that when the prosecutor and Sylvester were engaged in plea negotiations late in that week, the State did not disclose T.H.'s unavailability. Sylvester advised that he had explained to Andrews "how the Court can find unavailability," but that his client might want a continuance of trial.

After consulting with Andrews, Sylvester informed the district court that Andrews did not want a trial continuance but that he objected to the State's motion to admit the transcript. Sylvester explained that T.H. had testified at the preliminary hearing about her own sexual abuse and A.C.'s sexual abuse, although A.C. did not testify at the preliminary hearing. Sylvester complained that as a result:

> "I can't cross examine [T.H.] about things that in effect convict my client on another charge in this case that's not even related to her other than it's in the same case. So that's the problem with having her testimony just allowed in forthwith or, you know, all of it allowed.
>     . . . .
>     "MR. SYLVESTER: So we're objecting to that."

The district judge admitted T.H.'s preliminary hearing testimony into evidence, reasoning:

> "THE COURT: Sure. I understand. The rules of evidence allow for—well, K.S.A. 60-460(c) allows the use of testimony of a witness given at a preliminary hearing as an exception to the hearsay rule if that witness is unavailable. Unavailable as a witness is defined at K.S.A. 60-459(g), specifically (g)(5): absent from the place of hearing

51

because the proponent of his or her statement does not know and with reasonable diligence has been unable to ascertain his or her whereabouts.

"I think that the definition applies here. We have this witness being a runaway in the first place which caused her to be placed with this group home. She has since run from the group home. Efforts have been made to locate her. It's not as if people aren't looking. Specific efforts have been made to locate her in Wichita as soon as the State realized that the witness had run from the group home.

"So it seems to me that the prosecutor has made reasonable and good faith efforts to obtain the witness' presence at trial. I appreciate the fact that had the—had Miss Barnett known that [T.H.] would turn up missing and that her preliminary hearing testimony was going to be the equivalent of her trial testimony, different questions might have been asked, but the court—appellate courts have held for a long time that preliminary hearing transcripts may be admitted at trial upon the unavailability of a witness and that the right of cross examination initially afforded provides substantial compliance for the purpose behind the confrontation requirement.

"So the Court at this time will find that [T.H.] is unavailable and will permit her testimony given at preliminary hearing to be admitted pursuant to K.S.A. 60-460(c)."

We begin the analysis with our standards of review. A court's consideration of the admissibility of evidence may require application of statutory rules controlling the admission and exclusion of certain types of evidence. An evidentiary principle or rule, however, is applied as a matter of law or as an exercise of the district court's discretion, depending on the applicable rule. *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018).

An appellate court exercises de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence. *State v. Brown*, 307 Kan. 641, 644, 413 P.3d 783 (2018). As relevant to this case, our review of a defendant's claim that his or her confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated is de novo without any

deference to the trial court's interpretation of the Constitution. *State v. Stano*, 284 Kan 126, 139, 159 P.3d 931 (2007).

Finally, a district court's determination that a witness is unavailable to testify will not be disturbed on appeal absent an abuse of discretion. *State v. Flournoy*, 272 Kan. 784, 799, 36 P.3d 273 (2001); *State v. Zamora*, 263 Kan. 340, 342, 949 P.2d 621 (1997). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015).

Preliminarily, the State contends that Andrews may not raise the issue of T.H.'s unavailability on appeal because "defense counsel never objected that the State had been negligent in keeping track of T.H.'s whereabouts [or] otherwise assert that the State failed to meet the statutory requirements for showing that T.H. was unavailable under K.S.A. 60-459(g)(5)." Importantly, Andrews does not address the State's claim that he failed to preserve this issue for appeal in his appellant's brief or by filing a reply brief.

As reprised earlier, Sylvester did not state an objection to the unavailability of T.H. as a witness under K.S.A. 60-459(g)(5). Rather, without specifically framing the objection as a Sixth Amendment confrontation issue, Sylvester essentially objected to admission of the preliminary hearing testimony because it would defeat his ability to cross-examine T.H. at trial. We consider Sylvester's complaint at trial as a Sixth Amendment confrontation complaint.

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. See *State v. King*, 288 Kan. 333, 341-42, 204 P.3d 585 (2009) (explaining purpose behind contemporaneous-objection rule of K.S.A. 60-404). Moreover, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different

ground. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016) (by only objecting based on relevance at trial, defendant waived claim the evidence was unduly prejudicial).

Additionally, issues not raised before the trial court may not be raised on appeal. See *Kelly*, 298 Kan. at 971. Although there are exceptions to this general rule, see *Phillips*, 299 Kan. at 493, Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. Shortly thereafter, in *Godfrey*, 301 Kan. at 1044, our Supreme Court held that Rule 6.02(a)(5) would be strictly enforced.

Our review of the trial record persuades us that Andrews did not specifically raise a statutory objection that the State had failed to show that T.H. was an unavailable witness under K.S.A. 60-459(g)(5). Rather, his evidentiary objection is more appropriately characterized as a complaint that Andrews' Sixth Amendment confrontation rights were being violated due to Sylvester's inability to cross-examine T.H. at trial. Moreover, on appeal, Andrews does not explain why, despite this failure to preserve the statutory objection, we should consider it at the appellate level. We conclude that this particular evidentiary objection was not preserved in the district court, and Andrews has failed to claim an exception on appeal. Accordingly, Andrews' K.S.A. 60-459(g)(5) statutory claim, made for the first time on appeal, that T.H. was not properly designated as an unavailable witness is waived.

For the sake of completeness, however, we note that if this issue had been preserved, there is no showing of an abuse of discretion in the district court's finding that T.H. was an unavailable witness.

K.S.A. 60-459(g)(5) provides that an unavailable witness is one who is "absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts." In accordance with this statute, the State must show it acted in good faith and made a diligent effort to find the witness and serve that witness with a subpoena or otherwise secure the witness' attendance at trial. See *State v. Plunkett*, 261 Kan. 1024, 1034, 934 P.2d 113 (1997). A district court must assess the sufficiency of the State's efforts based on all the circumstances. See *Flournoy*, 272 Kan. at 800.

At trial, the facts surrounding T.H.'s unavailability were not disputed by Andrews. As found by the district court, T.H. had run away from her placement several months before trial. At the time she went missing from the group home, some four to five months prior to trial, her name was entered in the National Crime Information Center database as a runaway. Although the prosecutor's office was only notified of her runaway status five days before trial, the State promptly worked with St. Francis to develop leads as to T.H.'s whereabouts. Based on information that T.H. was in the Wichita area, the Wichita Police Department communicated to their officers an "ALT" (attempt to locate) request for her to be located and detained. Officers actively sought T.H. during the weekend before trial. The search for T.H. also included Detective Nagy, who is the officer responsible for runaways in Wichita, contacting the National Center for Missing and Exploited Children to ascertain if other jurisdictions had interacted with T.H., to no avail.

Kansas law requires that the State employ reasonably diligent efforts to locate a witness. See *State v. Alderdice*, 221 Kan. 684, 686-87, 561 P.2d 845 (1977); *State v. Brown*, No. 113,212, 2016 WL 6910080, at *2 (Kan. App. 2016) (unpublished opinion). "The State need not exhaust all possible means of finding witnesses," but simply to make a good-faith and diligent effort. *State v. Fields*, No. 114,961, 2017 WL 3119433, at *3 (Kan. App. 2017) (unpublished opinion). All things considered in what is a fact-intensive inquiry, we would not find the district court abused its discretion under these

55

circumstances. See *Zamora*, 263 Kan. at 342; *State v. Vaughn*, 254 Kan. 191, 201, 865 P.2d 207 (1993); *State v. Bey*, 217 Kan. 251, 254, 535 P.2d 881 (1975).

We next consider Andrews' objection—made in the district court and argued on appeal—that his Sixth Amendment right to confront witnesses was violated by the admission of a transcript of T.H.'s preliminary hearing testimony at trial.

Some factual context is necessary to analyze this issue. At the start of the preliminary hearing on January 9, 2014, the prosecutor advised the district court and counsel that he intended to present evidence in addition to the three rape counts against A.C., and one count of aggravated indecent liberties against R.M. that were currently charged in the information. In particular, the prosecutor advised that based on the anticipated preliminary hearing testimony, he was going to ask the district court to bind over on additional charges involving both A.C. and R.M., in addition to sexual exploitation charges involving T.H. The prosecutor informed the district court that he had previously advised Barnett of the anticipated additional charges. Barnett did not object to this procedure.

T.H. testified at the preliminary hearing regarding engaging in oral sex with Andrews while the defendant filmed the encounter on his cellphone. Additionally, she testified about spending time with A.C. at Andrews' residence during which time she believed that Andrews and A.C. had sexual intercourse. T.H. did not testify to any matters involving R.M.

Barnett cross-examined T.H. on the sexual conduct involving she and Andrews, in addition to T.H.'s knowledge of sexual activity between A.C. and Andrews. Our review of the transcript indicates that the prosecutor did not object to any of Barnett's cross-examination questions pertaining to A.C., and Barnett did not object that her cross-examination regarding A.C. was limited in any way. Moreover, the district court did not

impose any restrictions or limitations on Barnett's cross-examination of T.H. regarding the sexual activities that occurred between Andrews and the two young girls.

In addition to T.H., at the preliminary hearing, Detective Wertz, an investigator on the case, testified that he had viewed video that was taken from Andrews' cellphone showing T.H. and Andrews engaged in oral sex, and video of A.C. in the nude in a bathtub. Finally, R.M. testified to and was cross-examined about three instances wherein Andrews engaged in sexual intercourse with her. A.C. did not testify at the preliminary hearing.

After the presentation of evidence, the prosecutor asked the district court to bind Andrews over for arraignment and trial relating to the 11 felony counts for which he was ultimately tried. Barnett objected to amending the information because there was no testimony from A.C. regarding the sexual crimes involving her. Additionally, although she did not object to the admission of the evidence, Barnett complained that the only testimony regarding the crimes against A.C. came from T.H. which, in Barnett's view, was speculative and hearsay. The district court disagreed and bound Andrews over on the 11 felony charges.

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to confront witnesses against him or her. If a witness is unavailable at trial, the State may substitute testimony from that witness given in a previous hearing, so long as the defendant had a fair opportunity to cross-examine the witness at that proceeding. *State v. Reed*, 302 Kan. 227, 246, 352 P.3d 530 (2015).

> "This principle is also codified in K.S.A. 2006 Supp. 60-460(c)(2)(B), which provides for the admission of 'testimony given as a witness in . . . a preliminary hearing or former trial in the same action' when the witness is unavailable and 'the issue is such that the adverse party on the former occasion had the right and opportunity for cross-

examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered,' as long as it does not 'den[y] to the accused the right to meet the witness face to face.'" *Stano*, 284 Kan. at 142.

Andrews complains that

"T.H.'s absence affected his right to cross-examine and possibly impeach testimony from A.C. and T.H. herself because T.H. testified to Mr. Andrews' conduct with A.C. at the preliminary hearing and A.C. was not present at the preliminary hearing. While Mr. Andrews obviously had the opportunity to cross examine T.H. on her statements, he was unable to impeach her or cross examine her based A.C.'s statements of what occurred because A.C. did not testify at the preliminary hearing."

In essence, Andrews focuses his complaint on the claimed error of being unable to competently cross-examine T.H. regarding Andrews' crimes against A.C., not about any inability to cross-examine T.H. about the alleged crimes perpetrated against her.

The State counters that Andrews' counsel had the opportunity to fully cross-examine T.H. during the preliminary hearing regarding the crimes perpetrated upon her and A.C.

We are persuaded that Andrews has not shown a Sixth Amendment violation of the Confrontation Clause. Andrews was represented by Barnett at the preliminary hearing. Given that Andrews knew the three girls beforehand and was personally present at the time they were allegedly sexually assaulted, T.H.'s testimony regarding what she saw and heard involving Andrews sexually assaulting A.C. at his residence could not have come as a surprise. T.H. was well known to Andrews and she was hiding in his residence at the time of his arrest.

58

Moreover, the preliminary hearing occurred three months after Andrews' arrest. During this time, both A.C. and T.H. had been interviewed by the police and A.C. had been medically examined regarding her injuries. The police investigation, which occurred shortly after Andrews' arrest, resulted in the charging of three counts of rape relating to A.C. prior to the preliminary hearing. In short, it is apparent that Andrews had access to considerable discovery regarding the sexual assaults, including the allegations involving A.C. at the time of the preliminary hearing. He cannot credibly claim surprise at T.H.'s testimony regarding A.C. during the preliminary hearing.

Against this procedural background, we have reviewed Barnett's cross-examination and T.H.'s testimony. Barnett inquired into T.H.'s knowledge regarding the sexual assaults involving A.C. Her cross-examination was not limited in any way. During the presentation of evidence, Barnett made no contemporaneous objections to any of the prosecutor's questions or T.H.'s testimony. In short, Barnett was afforded the right and opportunity for cross-examination—which she pursued—with not just a similar but an identical defense interest and motive that Sylvester had at the time of trial. See *Reed*, 302 Kan. at 247 (The interest and motive of defense counsel on the prior occasion for cross-examination of a witness need only be similar, not identical, to the interest and motive at the later occasion.). We find no error.

Finally, assuming there was error, the district court's error was harmless because there is no reasonable possibility the admission of T.H.'s preliminary hearing testimony affected the district court's verdict.

When an error infringes upon a party's federal constitutional right, appellate courts will find the error harmless only if the party benefitting from the error persuades the court "beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the

error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]).

Here, we are convinced that the district court's verdict would not have been affected by the absence of T.H.'s preliminary hearing testimony. At trial, Detective Wertz testified that he interviewed both A.C. and T.H. During these interviews, both girls mentioned that Andrews had taken videos of them having sex with him. Officers subsequently obtained a search warrant, seized Andrews' cellphone, and discovered several video recordings of both A.C. and T.H. One video, State's Exhibit 31, showed A.C. naked in a shower. Andrews' face was clearly visible in the mirror as he recorded A.C. Another video showed a young girl engaging in oral sex on the person recording the video. Detective Wertz identified the young girl from the video as T.H. and confirmed that the video came from Andrews' cellphone. Reviewing this evidence, the district judge found:

> "So it seems to me the simple fact that this video is on Mr. Andrews' phone and the fact that it's not controverted that it's [T.H.] engaged in that video and the fact that it's not controverted that she's 16 years old, there's overwhelming proof of guilt on Count[s] [10 and] 11 and the Court does find Mr. Andrews guilty [of both counts of sexual exploitation of a child]."

We agree with the district court that the videos and trial testimony—without considering T.H.'s preliminary hearing testimony—proved beyond a reasonable doubt that Andrews was guilty of two counts of sexual exploitation of a child.

Finally, any erroneous admission of T.H.'s preliminary hearing testimony had no effect on Andrews' three rape convictions relating to A.C. At trial, A.C. testified that she had been raped by Andrews. Officer Shawn Isham testified that he interviewed A.C. at her foster home and that A.C. told him that Andrews had raped her "multiple times." Nurse Farley, who attended to A.C. at a local hospital, stated that A.C. had abrasions and

60

lacerations consistent with blunt force trauma. Farley noted these injuries looked recent and were consistent with A.C.'s account that she had been raped. As already noted, the district court saw a video with A.C. naked in the shower with Andrews in the background.

In summary, any error by admitting T.H.'s preliminary hearing testimony to prove that Andrews committed sex crimes against A.C. and T.H. was harmless. See *Ward*, 292 Kan. at 568-69. The trial evidence unrelated to T.H.'s preliminary hearing testimony was substantial and competent proof of Andrews' guilt. Any error had no effect on the outcome of Andrews' trial.

DENIAL OF MOTION FOR A PSYCHOLOGICAL EVALUATION OF A.C.

Finally, Andrews contends the district court erred when it denied his pro se motion for a psychological evaluation of A.C. Specifically, Andrews argues that he presented the district court with evidence "which would lead a reasonable person to believe that A.C. suffered from mental instability, had potentially been traumatized both sexually and [p]sychologically in the past and was potentially lacking in veracity."

The decision to order a psychological evaluation of a complaining witness is a discretionary matter by the district court. *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). Accordingly, appellate courts review the denial of a motion for a psychological evaluation for abuse of discretion. *State v. Berriozabal*, 291 Kan. 568, 580, 243 P.3d 352 (2010). A district court's decision constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the abuse of discretion bears the burden of showing it. *Robinson*, 303 Kan. at 90.

61

Kansas law provides that a district court may order a psychological evaluation of a complaining witness in a sex-crime case only if, based on the totality of the circumstances, it determines the defendant has shown compelling reasons to justify the evaluation. *Berriozabal*, 291 Kan. at 581. This is a rigorous standard for which district courts typically consider six nonexclusive factors: (1) whether there is corroborating evidence of the complaining witness' version of facts; (2) whether the complaining witness demonstrates mental instability; (3) whether the complaining witness demonstrates a lack of veracity; (4) whether similar charges by the complaining witness against others are proven to be false; (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition; and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what is the truth. 291 Kan. at 581.

Simply alleging mental instability is insufficient to require a district court to order a psychological evaluation. Rather, there must be demonstrable evidence of a mental condition that requires further investigation. 291 Kan. at 581. Occasional inconsistent statements from the complaining witness are not enough for a court to order a mental evaluation. 291 Kan. at 581.

Prior to trial, Andrews filed a pro se motion requesting a psychological evaluation of A.C. In the motion, Andrews argued that A.C. had "a history of mental illness [based on] her statement 'I cut myself' and . . . areas of cutting marks on thighs; lower arms; abdominal and back." Andrews also noted A.C. had "been in foster care since age 6 due to abuse by biological mother . . . had a history of sexual abuse with biological father . . . [and] had an unstable behavioral history."

The district court denied Andrews' motion, reasoning:

"There is no evidence . . . of the victim's—demonstrable lack of veracity. There's been no evidence that the victim has testified falsely or given false information in connection with things maybe even separate and apart from allegations of sexual misconduct. There's just nothing in the record that would suggest that the victim has a problem with veracity. There's nothing in the record that would suggest that the victim doesn't understand the difference between the truth and a lie."

On appeal, Andrews argues a confluence of facts "suggest a heightened possibility of mental instability that warranted an evaluation of A.C. prior to trial." He notes, "A.C. was a frequent run away from foster care" and "had been in foster care since she was six years old"; that "A.C. identified . . . [T.H.] as her sister despite the fact" that the two "were not related"; and that "A.C. was [d]iagnosed as suffering from . . . Attention Deficit Hyperactivity Disorder" (ADHD) and "medicated with Trazodone for a sleeping disorder." He also claims that A.C. "believed that her mother did not care about her and that she had had multiple sex partners despite her tender age of 13 years old."

Preliminarily, the State objects to Andrews' factual assertions made on appeal that were not made when the motion was argued and ruled on by the district court. For the first time on appeal Andrews asserts that A.C. was on medication for ADHD and a sleeping disorder. He further asserts that A.C. showed mental instability when she inaccurately referred to T.H. as her sister. We agree that these factual assertions were never presented to the district when it considered the motion and, as a result, Andrews has not designated a record sufficient to present these points to our appellate court. See *Miller*, 308 Kan. at 1157.

For legal support, Andrews cites *State v. Bourassa*, 28 Kan. App. 2d 161, 15 P.3d 835 (1999). In that case, Bourassa presented evidence that the 11-year-old victim was taking Prozac, had been under psychological care for behavioral disorders, accused her

father of sexually molesting her, tended to soil herself, and reportedly mutilated two kittens. The victim's sister—who was present when the claimed abuse took place—testified nothing inappropriate occurred. Based on these facts, our court found the district court erred when it refused to compel a psychological evaluation of the complaining witness. 28 Kan. App. 2d at 166.

*Bourassa* provides little support for Andrews' claims. Moreover, *Bourassa* stands as an outlier in the constellation of psychological evaluation cases, and it is frequently distinguished by Kansas appellate courts. See *State v. McCune*, 299 Kan. 1216, 1232, 330 P.3d 1107 (2014); *State v. Staples*, No. 114,717, 2016 WL 7430426, at *4-5 (Kan. App. 2016) (unpublished opinion).

*Staples* provides helpful guidance in that its facts are unlike *Bourassa* but similar to the case on appeal. In *Staples*, the defendant argued the district court erred when it denied a psychological evaluation of the complaining witness because the witness saw a therapist, had ADHD, and an anger disorder for which she took medication. Our court upheld the district court's ruling and found the victim's ADHD and anger disorders, by themselves, were insufficient to show that the victim lacked mental stability. 2016 WL 7430426, at *4-5.

Like *Staples*, other than the fact that A.C. may have had ADHD and an anger disorder, Andrews provided insufficient proof of an underlying mental disorder. Standing alone, these diagnoses are not enough to warrant a psychological examination. See, e.g., *State v. Coggs*, No. 104,934, 2012 WL 5364658, at *3 (Kan. App. 2012) (unpublished opinion) (finding that bipolar diagnosis, on its own, did not show a lack of mental stability).

Andrews also emphasizes A.C.'s characterization of T.H. as her "sister," when the two girls were not related. Although not preserved on appeal, we think it is more

64

probable that A.C. used this description as a term of endearment, rather than as a manifestation of some dishonest claim that T.H. was her biological kin.

Based on our review of the six factors applicable to an analysis of this issue, we are convinced that Andrews has not shown an abuse of discretion by the district court. See *Berriozabal*, 291 Kan. at 581. In particular, there was corroborating evidence of A.C.'s version of events; there was no proof of her lack of veracity; there was no claim that A.C. had ever made a false allegation of sexual assault; A.C. never provided an unusual response that indicated she was unaware of what is the truth; and given the lack of a substantial factual basis supporting Andrews' motion, the request for an evaluation appeared to be a fishing expedition.

On this record, we are convinced that the district court did not abuse its discretion when it denied Andrews' motion for a psychological evaluation of A.C.

Affirmed.